ROBINSON, APPELLANT, v. FERGUSON; THE COLUMBUS GREEN CAB, INC., APPELLEE.*

(No. 5504—Decided April 30, 1957.)

*Messrs. Buchanan, Peltier & Fuller,* for appellant.
*Messrs. Schwartz, Gurevitz & Schwartz,* for appellee.

BRYANT, J. Plaintiff below makes four assignments of error. From the pleadings and bill of exceptions we learn that she brought suit in the court below for damages for injuries, etc., received when a taxicab operated by defendant cab company was in a collision with a passenger automobile operated by another defendant, Ray Ferguson, of North Wilkesboro, North Carolina. The accident happened at the intersection of Atcheson Street and 18th Street in Columbus, Ohio. Plaintiff had entered the cab at her home, 426 North Monroe Avenue, and was traveling east in Atcheson Street.

As the cab neared Galloway, according to plaintiff, a truck entered Atcheson Street from Galloway ahead of the cab, which truck came to a halt at or near the curb on the right or south side of Atcheson Street near to the intersection of 18th Street.

*Motion to certify the record overruled, October 16, 1957.

Atcheson Street at 18th Street was a main thoroughfare, according to the undisputed testimony, and stop signs were erected on 18th Street requiring traffic in both directions to stop and yield the right of way to traffic on Atcheson Street.

The taxicab passed the parked or at least temporarily halted truck and started to cross the intersection proceeding in an easterly direction, when a northbound car driven by Ferguson on 18th Street came into the intersection in disregard of the stop signs and collided with the taxicab. Ferguson was arrested on a charge of disregarding the stop signs, and pleaded guilty thereto in a separate criminal action in Columbus Municipal Court.

The trial court summarized the evidence as follows:

"The facts as presented by the plaintiff, show that a truck either was proceeding ahead of the taxi and parked, or as stated by Mrs. Richardson, had been parked for some seconds. There is no definite evidence in this case as to how close this truck was to the corner or how close it was to the curb. The evidence shows that the taxicab proceeded to the left of this truck, and again, there is no evidence to show how close it was to the truck at the time it passed, nor is there any definite evidence as to whether or not it crossed the center of Atcheson Avenue. The evidence shows definitely that 18th Street is a stop street and that Ray Ferguson, the other defendant here, violated the law in failing to stop. There is no evidence as to where Mr. Ferguson was at the time the taxi passed the truck, Mrs. Robinson was unable to say where he was at that particular time, or as to whether the taxi driver was in such position or Mr. Ferguson in a position he saw he was going to violate the law. [sic.] The Swoboda case establishes the rule, which I think is acceptable, that all drivers on highways can assume that every other driver on the highway is going to obey the law until through his senses he finds that he is not and then he is thrown back upon the duty of due care after seeing that the other driver or person is not obeying the law."

The trial court, also in explaining the conclusions he reached, made the following statement:

"In this case there are three allegations of negligence, one, failure to observe, upon which no evidence has been presented,

that Mr. Ferguson was in such a position that the taxi driver could observe him, or that he observed him violating the stop sign on 18th Street; the second allegation of negligence in this case was travelling left of center while passing or overtaking in violation of the statute. I don't think the statute means passing a parked truck, and under the evidence of this case, with Atcheson Street being thirty feet wide and no evidence presented as to the width of the truck or as to how far it was parked from the curb, or what the distance between the truck and the taxi was, we may presume from those facts that the taxi was passing the truck to the left without further presuming that he might or might not be violating any statute, because the statute says unless compliance with this section is impossible because of insufficient roadway space. Therefore, the court can see no negligence or violation of this particular item of this allegation. The third is that the taxi was travelling thirty-five miles per hour. The evidence all shows that that is the prima facie speed, and as we know under the statutes of Ohio there is no speed limit in Ohio, but merely a prima facie speed, and there have been no facts presented to this court at the present time to show thirty-five miles an hour still was not a prima facie speed, because it has to relate back again to whether or not there was any evidence that the operator of the taxicab saw that Ray Ferguson was going to violate the law.''

Plaintiff sought to serve Ferguson as a defendant by service upon the Secretary of State, but the record shows that he was in default for answer and did not appear at the trial, and that plaintiff's counsel, after the directed verdict in favor of the cab company, dismissed the action as to Ferguson.

We cannot disagree with the trial court that there was a lack of evidence as to the allegation that the cab driver was negligent in failing to observe the Ferguson car. There simply was no evidence on this point.

As to the further allegation of negligence that the cab driver passed the truck illegally, it appears not to be disputed that the truck was not moving, whether it had been parked one second or a number of seconds and whether it was parked or temporarily stopped. It seems clear further that if the truck was not abutting on the curb, it at least was near. As to the

further allegation that the cab driver drove to the left of the center line, again there was a failure of proof. Plaintiff merely puts the cab in the center of the street and to the left of the truck.

Even without such failures, there still remains the question of proximate cause. It seems clear that the direct, proximate cause of the accident was the failure of Ferguson to observe the command of the stop signs and that if the cab was farther to the right—hence closer to the truck and the curb—it would increase the probability of the accident occurring.

As to the further allegation of negligence based upon speed, plaintiff testified that the cab was traveling 35 miles per hour or more, which means that substantially it was traveling at a prima facie lawful speed. We note that nowhere is it testified that the speed of the cab was such as to be, in itself, dangerous, reckless, unreasonable or otherwise improper.

The trial court stated correctly that there is no fixed speed limit in Ohio, only prima facie lawful or unlawful speeds. As above pointed out, this portion of Atcheson Street was a through highway. As to the prima facie lawful speed, Section 4511.21, Revised Code (Section 6307-21, General Code), provides in part as follows:

"* * *

"It shall be prima facie lawful for the operator of a motor vehicle, trackless trolley, or streetcar to operate the same at a speed not exceeding the following:

"* * *

"(C) Thirty-five miles per hour on state routes or through highways within municipal corporations outside business districts and which are not controlled-access highways;"

"* * * *"

We find that "through highway" is defined in Section 4511. 01, Revised Code (Section 6307-2, General Code), paragraph (FF) as follows:

"(FF) 'Through highway' means every highway or portion thereof at the entrance to which vehicular traffic from intersecting highways is required by law to stop before entering or crossing the same."

There is no evidence to support the allegation that the

speed of the cab was negligent in that it was unlawful. Plaintiff alleges it was error for the trial court to refuse to order the general manager to produce a report bearing on the accident said to have been made by the taxicab driver following the accident. It should be pointed out that the taxicab company admitted in its answer that it was the owner and operator of the taxicab in question and that plaintiff was a passenger therein at the time and place the cab was in collision with the motor vehicle driven by the out-of-state driver.

The trial court denied the demand for this report upon the argument by defendant's counsel that the document was privileged and had to do with the preparation of the defense of the case.

This rule of evidence is discussed in 21 Ohio Jurisprudence (2d), 558, Evidence, Section 538, Privileged Communications, which is as follows:

"An order for the production of books and writings which are privileged communications cannot be enforced. Thus it has been held that reports and records concerning an accident in which a public transportation vehicle was involved, which reports and records, according to the custom of the company owning such vehicle, were turned over to, and remained in the possession of the company's legal department, are privileged communications and their production cannot be enforced in an action predicated on such accident. However, the mere transfer of a document or record from a client to his attorney does not make such document or record privileged so as to prevent its production by a motion calling for the adverse party to produce the same."

Cited in support thereof are two decisions by the Ohio Supreme Court, *In re Bott,* 146 Ohio St., 511, 66 N. E. (2d), 918, and *In re Keough,* 151 Ohio St., 307, 85 N. E. (2d), 550. The trial court relied upon the latter case.

We think that the *Bott case* may be explained upon the fact that Bott and others were accused of a felony and the civil action was based in part on the flat charge of a rather sizeable larceny. Hart, J., in course of the opinion in the *Bott case* says, at page 515:

"* * * One observation may be appropriately made to the

effect that in order that truth may prevail and wrong may not be shielded, courts should be slow to suppress evidence which perchance may turn out to be competent and relevant and to reveal the truth.''

It is also noted that no reason at all was given other than advice of counsel.

A review of many decisions on the question here and related questions is contained in the opinion of Stewart, J., in the *Keough case, supra* (151 Ohio St., 307). That case held that general records of the Cleveland Transit System were subject to subpoena by one Gebauer, plaintiff therein, in an action for damages against Cleveland growing out of the operation of a city-owned street car. But this right does not extend to papers and records relating to the particular accident which came into being as part of the preparation of the defense. In the *Keough case, supra*, at page 310, Stewart, J., refers to the case of *In re Hyde*, 149 Ohio St., 407, 79 N. E. (2d), 224, holding that general records and reports are not privileged and may be subpoenaed. Judge Stewart said at page 311:

''Under the holding and logic of the *Hyde case*, Gebauer was entitled to the information as to the carbarn in which such car was kept on the date of the accident, as well as the information from the trip sheets showing the operation of such car on such date and the names of the operators and their times of operation of the car, all as required by the subpoena. Gebauer was entitled to elicit that information only from the records kept for general purposes by the city and not from any records which were prepared for use in connection with the defense of Gebauer's action. Gebauer was not entitled to the names or reports of any witnesses to his accident, which the city had secured, or to any records of information of any kind which were made or came into existence as the result of or concerning the accident. Such records were privileged in the hands of the city.''

The trial court herein held that the report made by the cab driver after his release from the hospital after a collision in which the cab was badly damaged and the passenger, plaintiff, appellant herein, was hospitalized, was privileged under the rule of the *Keough case*.

Nothing could be plainer than the Supreme Court language above quoted, and hence plaintiff is not entitled to any records, statements or information which the defendant has in its possession and which came into being as a result of the accident in which plaintiff was concerned.

As to the third assignment of error that "the trial judge erred in not applying the rule of evidence of *res ipsa loquitur* to the facts produced in evidence by the plaintiff," we agree with the trial court that to say that the defendant cab company had exclusive control of Ferguson's car is simply untenable.

As to the fourth assignment of error that "the trial judge erred in not permitting the plaintiff to amend his petition to conform to the proof of a separate act of negligence," this is a matter within the sound discretion of the court, and we feel the trial court did not abuse his discretion in this matter.

For the reasons above set forth, we conclude that the four assignments of error are not well taken, that the judgment of the court below should be, and hereby is, affirmed, and the cause remanded.

*Judgment affirmed.*

PETREE, P. J., and MILLER, J., concur.

ON MOTION to reconsider.

(Decided July 2, 1957.)

BRYANT, J. The sole question before the court is whether this court should reconsider its decision of April 30, 1957, wherein certain assignments of error were overruled, the judgment of the court below was affirmed and the cause remanded. Counsel for plaintiff, appellant herein, make no issue with respect to the ruling of the court upon the first, second and fourth assignments of error, but ask reconsideration of the decision with respect to the third assignment of error. That assignment reads as follows:

"The trial judge erred in not applying the rule of evidence of *res upsa loquitur* to the facts produced in evidence by the plaintiff."

We have again examined the bill of exceptions in this case. The court below directed a verdict in favor of the defendant and, of course, there was no occasion nor necessity for the court to deliver any charge. Nowhere have we been able to find from the record where the argument now advanced by plaintiff was urged upon the court below. That being the case, it is, of course, too late to raise it in an appellate proceeding.

Even if this were not so, the cases cited by plaintiff do not, in our opinion, support the argument advanced by plaintiff. For example, in the case of the *Columbus Ry. Power & Light Co.* v. *Lombard*, 33 Ohio App., 47, 168 N. E., 619, where plaintiff was struck by an automobile and knocked in front of a street car, it was alleged and proved to the satisfaction of the jury that a safety device on the street car, referred to as a "kid catcher," was defective and failed to work and instead of protecting plaintiff was on top of her when the car came to a rest.

The difference is that in the case now before this court the lower court found that there was a failure of proof as to any negligence on the part of the cab company, which proximately contributed to the injuries of plaintiff.

We concur with the holding of the court below.

Plaintiff also cites the case of *Glowacki, a Minor,* v. *The North Western Ohio Ry. & Power Co.,* 116 Ohio St., 451, 157 N. E., 21, 53 A. L. R., 1486. That was a case in which the plaintiff was a child of five years and was seriously injured while playing in the public highway near her home when she picked up a wire lying upon the ground, charged with 2,300 volts of electricity. The company apparently tried to defend upon the ground that the break in the wire was caused by a bullet. There was other evidence from one of the defendant's witnesses that marks on the wire in evidence were caused by a "nipping of the pliers." The simple fact is that this fallen wire charged with a deadly quantity of electrical current lay unprotected in a public place and was the direct and proximate cause of the injuries sustained by plaintiff.

For the reasons above set forth the motion to reconsider should be, and hereby is, overruled.

*Motion overruled.*

Petree, P. J., and Miller, J., concur.